BARRY J. PORTMAN
Federal Public Defender
LOREN D. STEWART
Assistant Federal Public Defender
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant FRANCO-PEREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>RAFAEL FRANCO-PEREZ,<br><br>　　　　　Defendant. | No. CR-09-0103 CRB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Court: Hon. Charles R. Breyer<br>Date:　March 31, 2010<br>Time:　2:15 P.M. |

**INTRODUCTION**

Rafael Franco-Perez stands before this Court to be sentenced on his conviction for Conspiracy to Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846 and 841(a)(1), with amounts specified in sections 841(b)(1)(A)(i) and 841(b)(1)(A)(viii). The plea agreement, entered under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, provides that a reasonable and appropriate disposition of this case is a sentence between 210 and 360 months. After the Court considers all of the circumstances of this case pursuant to title 18 U.S.C. section 3553, Mr. Franco-Perez respectfully requests that the Court sentence him to <u>210 months (17.5 years) imprisonment</u> – a sentence that is more than sufficient to fulfill the goals of sentencing. The probation officer has recommended a sentence of 360 months, and Mr. Franco-

Perez anticipates that the government will seek the same.

The Court should sentence Mr. Franco-Perez to 17.5 years for several reasons. First, a higher sentence would give a defendant in this type of case no incentive whatsoever to plead guilty, as a guideline-sentence after motions and trial would be virtually identical to the sentence imposed here. Second, although this case involved a serious amount of drugs, it involved no violence, and Mr. Franco-Perez has no violence whatsoever in his criminal history. Third, proportionality in sentencing as to defendants in this case and others, as well as to Mr. Franco-Perez's previous longest sentence of 365 days, militate in favor of a 17.5-year sentence. Finally, Mr. Franco-Perez has already begun to show signs of rehabilitation, including his commitment to use his time in custody to address his drug problem (although he will not receive an RDAP sentencing reduction) and to improve himself as a person. He desperately wants to reunify with his family sooner than later so that he can return to being the supportive father.

A 17.5-year sentence for Mr. Franco-Perez, who is thirty-eight years old, would leave him incarcerated until approximately 2026, when he will be fifty-five years old. In contrast, the government and the probation officer ask the Court to incarcerate Mr. Franco-Perez until 2039, when he will be nearly seventy years old. That is excessive.[1] Even a 17.5-year sentence is unusually lengthy and sends a clear message that Mr. Franco-Perez's criminal conduct is being taken very seriously and will not be tolerated.

## FACTUAL BACKGROUND

Rafael Franco-Perez was born in Apatzingan, Michoacan, Mexico, in 1971. *See* PSR ¶ 59. He attended school through the ninth grade, when he dropped out of school to work full time at his family's store. PSR ¶ 72. His father had started a clothing store when Mr. Franco-Perez was young. PSR ¶ 60. Mr. Franco-Perez's family still has the clothing store; he hopes to work there together with his family members when he is released from custody.

---

[1] It is also noteworthy that a thirty-year sentence would cost taxpayers $776,835.00. *See* PSR ¶ 85 (noting cost of annual BOP incarceration of $25,894.50).

1    Mr. Franco-Perez married his wife, Maria Guadalupe Valencia Garcia, in Mexico in
2 about 1990.  PSR ¶ 62.  The two are separated but have two teenage children together.  Ms.
3 Valencia and her children continue to live in Apatzingan and depend financially on Mr. Franco-
4 Perez's mother and her clothing store.  PSR ¶ 62.

5    Mr. Franco-Perez first came to the United States in the early- to mid-1990s, and has been
6 in the United States on and off since that time.  PSR ¶ 61.  Mr. Franco-Perez has three children
7 from other relationships here in the United States.  Those children are six, three, and one year
8 old.  PSR ¶¶ 64-65.  The youngest child was born just two days before Mr. Franco-Perez was
9 arrested on this case.  PSR ¶ 64.

10    Mr. Franco-Perez has struggled with drug and alcohol addiction for many years.  He
11 began drinking alcohol when he was in his teens and used powder cocaine regularly for the ten
12 years leading up to his arrest (1999-2009).  PSR ¶ 71.  Mr. Franco-Perez requests that the Court
13 recommend him to the Bureau of Prisons Residential Drug Abuse and Treatment Program
14 (RDAP), and the probation officer concurs with this request.  *See* PSR Sentencing
15 Recommendation at 3; *see also* Declaration of Loren D. Stewart in Support of Sentencing
16 Memorandum ("Stewart Decl.") ¶ 2 & Ex. A (letter from Rafael Franco-Perez to Judge Breyer,
17 stating "I was addicted to drugs and blinded by them").  Mr. Franco-Perez is not a U.S. Citizen,
18 so he does not stand to receive a sentencing reduction for the program.  He recognizes his
19 problem with drugs, however, and wants help.

20    Mr. Franco-Perez has also availed himself of the few programming opportunities
21 available at Glenn Dyer Detention Facility (Alameda County Jail) while in pretrial detention on
22 this case.  He believes that "everything happens for a reason and is part of a bigger plan," and he
23 has concluded that "this is the end of drugs in my life."  Stewart Decl. ¶ 2 & Ex. A (letter from
24 Rafael Franco-Perez to Judge Breyer).  He completed a twelve-session anger management class
25 and a sixty-day drug abuse program called "D.E.U.C.E." (Deciding, Educating, Understanding,
26 Counseling, Evaluation).  *See* PSR ¶ 70; *see also* Stewart Decl. ¶ 3 & Ex. B (certificates of

DEFENDANT'S SENTENCING MEMO,
CR-09-0103 CRB                                          3

completion of same). He views this very serious case as an opportunity to get substance abuse treatment, vocational training, and to get his life back on track. His exemplary conduct while awaiting trial and sentencing demonstrate his commitment to his new course in life.

Mr. Franco-Perez is tremendously remorseful for having done what he did. During the PSR interview with Officer Ben Flores, Mr. Franco-Perez tearfully expressed his contrition for his acts. PSR ¶ 69 (noting that Mr. Franco-Perez "became emotional"). Mr. Franco-Perez asked for forgiveness and for an opportunity to begin his life anew with his family sooner than later. PSR ¶ 35. He pledged that he "would not return to the United States." PSR ¶ 35; Stewart Decl. ¶ 2 & Ex. A (letter to Judge Breyer stating, "[W]hen I do obtain my freedom, I don't ever plan on coming back, that I can assure you"). He particularly regrets his separation from his children, and the knowledge that all of his children will be adults by the time he is released. PSR ¶ 35; Stewart Decl. ¶ 2 & Ex. A (letter to Judge Breyer discussing his wife and children, stating, I "would like to be back in their lives as soon as possible to continue to grow as a person and provide for them as a father"). Mr. Franco-Perez is resigned to the imposition of a substantial prison sentence on this case, and wants to make the most of his incarceration.

**ARGUMENT**

**I.    THE SENTENCING GUIDELINES**

As the Court is well aware, it must first determine the applicable guideline range as the "starting point" or "benchmark." *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). There is no dispute that, because of the quantity of drugs involved in this case, the sentencing guidelines yield a range of 360-Life.[2] PSR Sentencing Recommendation at 1; PSR ¶ 38 (noting

---

[2] Although the career offender guideline also applies, the probation officer correctly notes that it is immaterial because the drug quantities in this case lead to a higher base offense level than would the career offender guideline. PSR ¶ 47. Were this case to be sentenced based on the career offender guideline, Mr. Franco-Perez would extensively brief its applicability and the advisability of following that guideline. In the unlikely event that the Court finds the career offender guideline material to the Court's sentencing decision here, Mr. Franco-Perez requests an opportunity to brief its applicability and application to his case.

DEFENDANT'S SENTENCING MEMO,
CR-09-0103 CRB                            4

base offense level of 38 because of quantity of drugs); Plea Agreement (Docket No. 80) ¶ 7.

The probation officer points out that Mr. Franco-Perez could have achieved the same offense level under the guidelines with a smaller quantity of drugs. PSR Sentencing Recommendation at 1 (discussing equivalency of 30,000 kilograms). But the Court should also consider that the guidelines provide no greater penalty for larger quantities of drugs. That is, a drug trafficker arrested with a boat, truckload, or warehouse full of drugs would, under the guidelines, receive the same base offense level as a defendant like Mr. Franco-Perez, who possesses only a briefcase full of drugs. *See* U.S.S.G. § 2D1.1(c) (drug table, providing base offense level of 38 for only 1.5 kg of actual methamphetamine, the drug at issue here). Although the probation officer describes the quantity of drugs at issue in this case as "staggering," PSR Sentencing Recommendation, the fact is that this case involves just over nine kilograms of drugs. *See* Plea Agreement (Docket No. 80) ¶ 7. It is a large amount of drugs, but more serious cases can and do exist. Considerations of proportionality in sentencing suggest that the Court should reserve the stiffest sentences (360-Life) for cases of even greater severity than Mr. Franco-Perez.

## II. THE APPROPRIATE SENTENCE BASED ON 18 U.S.C. § 3553(a)

### A. General Considerations

This Court must not only consider the guideline range. The Court must also consider the other directives set forth in title 18 U.S.C. section 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). "The overarching statutory charge for a district court is to impose a sentence sufficient, *but not greater than necessary*" to achieve the goals of section 3553(a). *Carty*, 520 F.3d at 991 (internal quotations omitted). Those goals include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- to afford adequate deterrence to criminal conduct;
- to protect the public from further crimes of the defendant; and
- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

DEFENDANT'S SENTENCING MEMO,
CR-09-0103 CRB 5

Section 3553(a) directs sentencing courts to consider a number of additional factors, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

**B.    The Appropriate Sentence in this Case**

There are four broad reasons that the Court should impose a sentence that is considerably below the guideline range in this case. First, the Court should place great value on Mr. Franco-Perez's full acceptance of responsibility and his decision to plead guilty in this case. Second, sentences of 360-Life should be reserved for the most severe cases, particularly those that involve violence, which is notably absent in this case and in Mr. Franco-Perez's criminal history. Third, a sentence of 30 years (or anything close to it) is disproportional to other cases of great severity and to Mr. Franco-Perez's prior convictions. Finally, general considerations about Mr. Franco-Perez's history and characteristics justify the imposition of a 17.5-year sentence.

**1.    A Thirty-Year Sentence Would Remove Any Incentive for Defendants in Cases of this Magnitude to Plead Guilty.**

If the Court were to impose a sentence of thirty years, as requested the by the government and recommended by the probation officer, defendants in serious cases like this one would have no incentive to plead guilty. That is, if Mr. Franco-Perez were to litigate the case including, but not limited to, discovery disputes, motions relating to confidential informants, wire tap motions, suppression motions, *Miranda* issues, *Franks* motions, and trial—a process that could easily take five years or more—his sentencing guideline range would still be 360-Life. The government, the Court, the Federal Defender's Office, and the panel attorneys in the case would expend years of resources fighting the case. The Court would be required to adjudicate countless motions, review thousands of pages of filings, and conduct a lengthy jury trial. Instead, in a relatively short time,

Mr. Franco-Perez has agreed to plead guilty on the promise of a possibility of a sentence of 17.5 years. A sentence of 30 years or anywhere near it would eviscerate the few incentives that Mr. Franco-Perez had to plead guilty in this case, and would send a message that future similarly-situated defendants (and defense attorneys) should simply litigate all issues tooth and nail.

Further, in multi-defendant cases like this one, the Federal Public Defender Office is the lynch-pin of the defense team, spear-heading litigation efforts, hosting joint defense meetings, and generally being in a position to contribute a disproportionately large share of defense resources. Mr. Franco-Perez's decision to enter a guilty plea here appears to have driven several other defendants, at least in part, to also plead guilty shortly after he did. *See* Docket No. 85 (guilty plea of Josefina Rodriguez); Docket No. 89 (guilty plea of Cornelio Mata Espinoza); Docket No. 92 (guilty plea of Anthony Johnston); Docket No. 119 (guilty plea of Vicente Franco-Escalera). Mr. Franco-Perez's early guilty plea and clear acceptance of responsibility for this crime was of inordinately large value to the government, as it sharply reduced the possibility of years of litigation over this case.

### 2. Because Mr. Franco-Perez and the Facts Underlying this Case are Utterly Devoid of Violence, He Deserves Some Leniency.

Unlike many serious drug cases, this case lacks any suggestion of violence or gang activity. Mr. Franco-Perez's criminal history is also devoid of any violent behavior. *See* PSR ¶¶ 51-54 (recounting criminal history of four convictions over 18-year period, none of which involved any use or threatened use of force, or even any suggestion that any violence was involved). The Court should take this into consideration, and should reserve the most serious sentences for those cases where the danger to the public is not only the danger of illicit drugs, but also that posed by serious violent behavior.

Although the Court will undoubtedly draw on its own experience, undersigned counsel thinks it appropriate to cite at least one example of a more "serious" case. In *United States v. Douglas Stepney, et al.*, CR-01-0344 MHP, the government brought a case against Mr. Stepney

and his co-defendants involving more than fifty charged counts. The counts included major drug conspiracies, continuing criminal enterprise activity, multiple counts of use of firearms in relation to drug trafficking, criminal street gang charges, possession of powder cocaine with intent to manufacture cocaine base, drive by shootings, and possession of a machine gun. *See United States v. Douglas Stepney, et al.*, CR-01-0344 MHP (Docket Nos. 68, 270, 412, 544 (indictment and superseding indictments)). It involved dozens of gang-related unsolved murders. Mr. Stepney ultimately pled guilty to three counts that included drug and firearms charges, and was sentenced to a custody term of 276 months (23 years). *See id.* (Docket No. 1444, Sentencing Minute Entry). That lead defendant was almost certainly more culpable than Mr. Franco-Perez.

Mr. Franco-Perez does not intend to downplay the seriousness of his offense. He seeks to place it into context. He recognizes that he will face of sentence of at least 17.5 years, and perhaps more. But to sentence Mr. Franco-Perez to a custody term on par with or above Mr. Stepney—a case that involved drugs, machine guns, drive-by shootings, and homicides—would be disproportionate. *See* 18 U.S.C. § 3553(a)(6).

### 3. Proportionality in Sentencing and Relative Culpability Militate in Favor of a 17.5-Year Sentence.

Only one other defendant has been sentenced in this case: Josefina Rodriguez. *See* Docket No. 135. Although Mr. Franco-Perez and Ms. Rodriguez had very different roles in this conspiracy, her conduct was central to the conspiracy and was very serious in its own right. *See* PSR ¶ 18 (Ms. Rodriguez packaging of drugs for sale); ¶ 23 (arrest after car stop with $353,877 in drug proceeds in the car). On February 3, 2010, this Court sentenced Ms. Rodriguez to 96 months (8 years) in custody. *See* Docket No. 135.

Mr. Franco-Perez asks here for a sentence of 17.5 years (210 months), which is considerably more than double the sentence that Ms. Rodriguez received. The government asks for 360 months, which is almost four times the length of Ms. Rodriguez's sentence. It is clear that, as a matter of relative culpability, Mr. Franco-Perez *should* receive a longer sentence than

1  Ms. Rodriguez; a sentence that is more than double the length of Ms. Rodriguez's sentence
2  adequately addresses his more serious role.

3      Mr. Franco-Perez has never served more than one year in the county jail.  *See* PSR ¶¶ 51-
4  54 (prior custody sentences of 4 months, 1 month, 6 months, and one year).  The sentence that
5  Mr. Franco-Perez *requests* is a sentence that is 17.5 times longer than any sentence he has ever
6  received.  This enormous increase is a tremendous concession on his part, and the sentence
7  would leave him in custody until approximately 2026.

8      **4.**    **Other 3553(a) Considerations Support a 17.5-Year Sentence.**

9      Mr. Franco-Perez has swiftly and forthrightly accepted responsibility for this offense, and
10  he pled guilty quickly in a manner that permitted the government and the Court to conserve
11  resources.  Mr. Franco-Perez is very sorry that he did what he did.  For him, the greatest sanction
12  in this case is that he will be absent as a father.

13      Although Mr. Franco-Perez has a history that includes drug convictions, he does not have
14  any arrests in addition to his drug convictions.  Furthermore, none of his arrests involve violence
15  or the possession or use of firearms.  Mr. Franco-Perez is not the type of offender that deserves
16  the stiffest sentence.

17      Mr. Franco-Perez has a large family, including a two young sons, from whose lives he
18  will be absent for nearly twenty years.  Whatever sentence the Court imposes, when Mr. Franco-
19  Perez is released, he will be an older man, and his children may well have children of their own.
20  He will be a grandfather.  And older offenders have been shown to have a lower rate of
21  recidivism than younger offenders.

22      Mr. Franco-Perez fully intends to participate in the RDAP program offered by the BOP
23  but, because of BOP policies, he will receive no reduction off of his sentence for his completion
24  of the program.  As noted above, he would like the program in any case.  But because of his
25  immigration issues, he has virtually no way to receive the sentencing reductions that U.S. citizens
26  receive.

1  Finally, a federal felony conviction and sentence of 17.5 years (210 months)
2  imprisonment are extremely serious consequences that will more than adequately punish Mr.
3  Franco-Perez for his offense conduct and will also adequately deter him from re-offending.  He
4  intends to live out his life in Mexico after he is deported.  In full consideration of his history and
5  characteristics, together with the other goals of sentencing, Mr. Franco-Perez respectfully
6  requests that the Court impose a sentence of 17.5 years incarceration.

## CONCLUSION

For the foregoing reasons, Mr. Franco-Perez respectfully requests that the Court sentence him to 17.5 years (210 months) in the custody of the Bureau of Prisons.  That sentence is sufficient, but not greater than necessary, to meet the Court's sentencing objectives.

Dated: March 24, 2010

                                        Respectfully submitted,

                                        BARRY J. PORTMAN
                                        Federal Public Defender

                                        _____/s/_____
                                        LOREN D. STEWART
                                        Assistant Federal Public Defender