JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

AARON D. WEGNER (CABN 243809)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6831
    Facsimile: (415) 436-6982
    E-Mail: aaron.wegner@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. CR 09-0103 CRB |
| | ) | |
| | ) | UNITED STATES SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| RAFAEL FRANCO PEREZ, | ) | |
| a/k/a "Primo," "Padrino" | ) | Date: March 31, 2010 |
| | ) | Time: 2:15 p.m. |
| Defendant. | ) | Court: Hon. Charles R. Breyer |
| | ) | |
| | ) | |

      On September 17, 2009, the defendant pled guilty to Count One of the Indictment charging him with knowingly and intentionally conspiring to possess with intent to distribute and to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, and 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(A). According to the terms of the defendant's plea agreement, the parties agreed that the appropriate sentence in this case is between 210 and 360 months.

      On March 17, 2010, the government received the final Presentence Report ("PSR") in this matter. The PSR stated that the "nature, circumstances, and seriousness of this offense are

too great to go below the advisory guideline range" and characterized the amount of drugs involved in the conspiracy as "staggering." Accordingly, the PSR recommended a sentence of 360 months imprisonment. For the reasons detailed below, the government concurs with the PSR's recommended sentence.

## BACKGROUND

The government's long term investigation into the defendant's drug organization began in the fall of 2007 and concluded with nine individuals, including the defendant, being arrested on February 4, 2009. During the government's investigation, it became clear that the defendant was the supervisor of a large-scale narcotics organization with significant ties to Mexico. The organization imported drugs into the United States through the Mexican border and distributed kilogram-quantities of controlled substances, in particular crystal methamphetamine and heroin, in and around the San Francisco Bay Area. As detailed in his plea agreement, the defendant supplied other members of the conspiracy, most notably co-defendant Veronica Alvarado Gutierrez, with large amounts of heroin and methamphetamine over a two-year period.

The level of the defendant's involvement in the conspiracy is highlighted by two important seizures that occurred in 2008. On April 5, 2008, the defendant was intercepted, pursuant to a federally authorized wiretap, giving directions to co-defendant Josefina Rodriguez to pick up money from a drug trafficker in the Bay Area. During subsequent telephone calls between the defendant and Rodriguez, it became evident that Rodriguez was collecting drug profits (including $120,000 from the defendant) with the intention of driving the cash to Mexico on April 6. On April 6, 2008, Rodriguez's car was stopped by the California Highway Patrol near Los Banos, California. Law enforcement officers searched the car and found over $353,000 in cash.

In early November of 2008, based on interceptions from a federally authorized wiretap on the defendant's cellular telephone, agents identified a shipment of crystal methamphetamine being sent from Mexico to the defendant in the Bay Area. On November 17, 2008, the defendant was intercepted giving directions to the driver of the truck containing the methamphetamine, co-defendant Joel Ceja Mendoza. The defendant was also intercepted giving directions to a second

individual, co-defendant Vincente Franco Escalera, whose task was to meet Ceja Mendoza and help unload the methamphetamine. While the methamphetamine was originally supposed to be unloaded at Franco Escalera's home, the defendant was intercepted instructing Franco Escalera and Ceja Mendoza to drive to Ceja Mendoza's home in Los Banos, California. A short time later, the California Highway Patrol pulled over Ceja Mendoza and discovered 6.3 kilograms of actual methamphetamine stored in a secret compartment in the truck's transmission. The defendant was later intercepted commenting to Franco Escalera, "I hope they don't take him [Ceja Mendoza] to the station, because if so, that's going to be it for that guy."

On February 4, 2009, the defendant was arrested and a federal search warrant was executed on the home in Redwood City, California, that he shared with co-defendant Josefina Rodriguez. During the search of the home, agents recovered $37,807 in cash.

## LEGAL STANDARD

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id*. The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.*

# ARGUMENT

### A.  The Correct Guidelines Range Is 360 Months to Life In Prison

#### 1.  The Correct Guidelines Calculation Is Level 38

The parties and the Probation Office agree that the following sentencing guidelines calculation is correct:

| Base offense level | USSG § 2D1.1(c)(1) | 38 |
|---|---|---|
| Manger/Supervisor Role Enhancement | USSG §3B1.1(b) | +3 |
| Defendant accepted responsibility | USSG §3E1.1(a)+(b) | -3 |
| Total offense level | | 38 |

(Plea Agreement, ¶ 7; PSR ¶¶ 38-46.)

#### 2.  The Defendant's Criminal History Category Is CHC VI

The government agrees with the U.S. Probation Office's calculation of the defendant's criminal history, resulting in a Criminal History Category of V.  (PSR ¶ 57.)  However, given that the defendant is a Career Offender within the meaning of USSG § 4B1.1(a), a Criminal History Category of VI should be applied.  See USSG § 4B1.1(b).

#### 3.  The Correct Guidelines Range Is 360 Months to Life In Prison

The Guidelines Range provided for Offense Level 38 and Criminal History Category VI is 360 months to life in prison.  *See* U.S.S.G., Sentencing Table.  The sentencing range lies in Zone D of the Sentencing Table, and the sentence must therefore be served in prison.  *Id*.

### B.  Prison Sentence Of 360 Months Satisfies The 3553(a) Factors

Analysis of the Guidelines and § 3553(a) shows that 360 months in prison is a reasonable and appropriate sentence in this case, and for this defendant.

#### 1.  360 Months In Prison Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – § 3553(a)(1)

The defendant began living in the United States in 1990 and his life here has been littered with contacts with law enforcement officials.  The defendant criminal history began at the age of 19 when he was arrested for selling heroin in Redwood City, California.  The defendant was later convicted of this offense and was sentenced to three years probation.  In November of 1996, the

defendant was arrested after police searched the defendant's residence and found cocaine and $2000 in cash. The defendant was convicted of "Accessory" in San Francisco Superior Court and was sentenced to three years probation.

Undeterred by his two criminal convictions, the defendant remained in the United States and continued selling drugs. In October of 2000, the defendant was arrested after selling heroin to a government confidential informant. The defendant was convicted of possession of heroin for sale and was sentenced to three years of probation. In January of 2006, the defendant was a passenger in a car that was pulled over for a traffic infraction. As the car came to a stop, officers observed a round white object being thrown out of the passenger side window. Officers later recovered the projectile – a plastic bowl containing 505.1 grams of crystal methamphetamine. In addition, officers recovered a small amount of methamphetamine and $4,611 from the defendant's pants. The defendant was convicted of possession of methamphetamine for sale and was sentenced to two years in prison (suspended). In September of 2006, following his sentence, the defendant was deported to Mexico. However, the defendant illegally returned to the United States within two months and began selling drugs in connection with the instant case.

A review of the defendant's record indicates that he meets both the statutory and common definitions of a "career offender." The defendant's livelihood in the United States has been derived from one simple source – selling illegal drugs. It does not appear that the defendant has ever held a legitimate job in the United States or contributed to society in any meaningful way. When the defendant was not selling drugs in the United States, he was pursuing several women, and fathered three children by two different women starting in 2003. It is also notable that the defendant used Brian Garcia, the minor son of one of his girlfriends, to help him distribute 242 grams of heroin on October 4, 2008.

Furthermore, the Court should consider the amount of drugs and money involved in this conspiracy. As noted above, based on the wiretap communications of the defendant, federal agents seized 6.73 kilograms of pure crystal methamphetamine and over $353,000 from co-defendants in this case. However, these amounts, while staggering, are likely a mere fraction of the total amount of drugs and money the defendant was involved with during his two year

involvement in this conspiracy. For example, when Ceja Mendoza was arrested on November 17, 2008, agents had information that the defendant was actually waiting for three separate vehicles to arrive from Mexico, each carrying methamphetamine. On November 19, 2008, only two days after Ceja Mendoza was arrested, agents observed another white Ford F-150 at Vicente Franco Escalera's house in Stockton, California. In the driveway of the home, agents observed Franco Escalera, the defendant, and a third unknown individual standing by the truck. Agents later observed all three men working underneath the truck. On November 30, 2008, the third individual was arrested in San Diego, California, while crossing the border in the same white Ford F-150 truck. Agents searched the truck and found 24.5 pounds of methamphetamine concealed in the transmission. Clearly, the defendant is not an individual who coordinated the delivery of a large amount of methamphetamine on a single occasion. Rather, these surveillances and seizures demonstrate to the Court that the defendant is a sophisticated high-level drug dealer who supervised a massive drug conspiracy.

In sum, the defendant has consistently displayed a brazen disrespect for the criminal and immigration laws of the United States. While the defendant began as a 19 year old selling a small amount of heroin on the streets of Redwood City, he evolved into a supervisor of a large-scale narcotics organization responsible for the importation and distribution of kilogram quantities of heroin and methamphetamine. In his personal life, the defendant's lack of a moral compass has caused him to involve several others in his criminal lifestyle, including former girlfriends and a minor child. The Court should simply not tolerate this type of conduct. Accordingly, the government believes that 360 months in prison is an appropriate sentence in this case.

**2.     360 Months In Prison Should Deter The Defendant From Further Illegal Activity and Protect the Public from Further Crimes– §3553(a)(2)(B)+(C)**

The defendant has been convicted of three felonies and one misdemeanor since he began living in the United States in 1990. Despite the sentences the defendant has received as a result of these convictions, the defendant has continued to engage in narcotics trafficking. The defendant is a menace to the public in general. He is the type of defendant for whom the career

offender guidelines are established, and he should be sentenced accordingly. By imposing the term proposed here – 360 months – the Court will send a message to address the seriousness of this offense, promote respect for the law, provide just punishment, and deter the defendant from future criminal conduct.

### 3. The Defendant's Alleged Drug Addiction Does Not Warrant a Departure

In his letter to the Court, the defendant alleges that he "was addicted to drugs and blinded by them." However, the defendant's alleged drug addiction is not a proper basis for a downward departure under the Guidelines. *See* U.S.S.G. § 5H1.4 ("Drug dependence or abuse is not a reason for a downward departure.").

### CONCLUSION

Based on the foregoing, the Government recommends a sentence of a term of imprisonment of 360 months; five years of supervised release (with conditions to be fixed by the Court); and a $100 special assessment.

DATED: March 24, 2010

    Respectfully submitted,

    JOSEPH P. RUSSONIELLO
    United States Attorney

       /s/
    AARON D. WEGNER
    Assistant United States Attorney